UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **ROBERT ZACK, Individually and on behalf of Others Similarly Situated,** Plaintiff, | CASE NO. 3:22-cv-132 |
| v. | JURY TRIAL DEMANDED |
| **ELK ENERGY SERVICES, LLC,** Defendant. | FLSA COLLECTIVE ACTION |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

1. Plaintiff Robert Zack (Zack) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Elk Energy Services, LLC (Elk Energy) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. In 2020, Zack worked for Elk Energy as a Pipeline Inspector.

3. Elk Energy failed to pay Zack and other similarly situated workers overtime as required by the FLSA.

4. Zack and the other similarly situated Elk Energy workers for regularly worked more than 40 hours a week.

5. But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

6. Instead of receiving overtime as required by the FLSA, Elk Energy paid Zack and the other workers a flat amount for each day worked (a day-rate) without overtime compensation.

7. Elk Energy's policy of paying these employees a day rate with no overtime pay violates the FLSA.

8. Notably, Elk Energy knowingly and willfully carried out their illegal pay practice of failing to pay Zack and the Putative Class Members for their overtime hours.

9. In 2019, over 10 former employees sued Elk Energy for their failure to pay overtime in violation of the FLSA.[1]

10. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has personal jurisdiction over all the claims against Elk Energy because Elk Energy is domiciled in this District.

13. Venue is proper under 28 U.S.C. § 1391(b) & (c) because Elk Energy conducts substantial business operations and maintains their corporate headquarters in this District and Division and a substantial part of the events / omissions giving rise to this claim occurred in this District and Division.

## PARTIES

14. Elk Energy is a West Virginia corporation and may be served through its registered agent Rick Harris at 62 North Pinch Road, Elkview, West Virginia, 25071 and/or PO Box 130, Elkview, West Virginia, 25071.

15. During 2020, Zack worked for Elk Energy as a Pipeline Inspector in Pennsylvania.

16. As a pipeline inspector, Zack's duties included inspecting pipelines for faults, submitting daily reports regarding the construction of the pipeline, and numerous other forms of non-exempt work.

17. Throughout his employment with Elk Energy, Zack was paid a day-rate with no overtime compensation.

---

[1] *See Lupardus v. Elk Energy Services, LLC*, No. 2:19-cv-00529 (S.D. W. Va. 2019).

18. Zack's relationship with Elk Energy was an employer/employee relationship.

19. Zack's written consent is attached as <u>Exhibit A</u>.

20. Zack brings this action on behalf of himself and all other similarly situated workers that were paid under Elk Energy's day-rate system.

21. Despite regularly working more than 40 hours each week, Elk Energy paid these workers a flat amount for each day they worked and did not pay them any overtime compensation when they worked in excess of 40 each week.

22. First, Zack represents a class of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA class is defined as:

> **All workers, employed by or working on behalf of, Elk Energy Services, LLC that were paid a day-rate with no overtime at any time within the past three (3) years** (the Putative Class Members).

23. The Putative Class Members are easily ascertainable from Elk Energy's business and personnel records.

## COVERAGE UNDER THE FLSA

24. At all relevant times, Elk Energy has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Elk Energy has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Elk Energy has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Elk Energy has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

27. In each of the last three years, Elk Energy has had annual gross volume of sales made or business done of at least $1,000,000.

28. At all relevant times, Zack and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. Elk Energy treated Zack and the Putative Class Members as employees and uniformly dictated the pay practices applied to Zack and the Putative Class Members.

30. Elk Energy's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

31. Elk Energy is an inspection company that operates "in over 12 states" and involved in the transmission, storage, production, distribution, exploration and construction of their natural gas systems.[2]

32. To provide these services, Elk Energy hires inspectors (like Zack) to work on its behalf, including Pipeline Inspectors.

33. As a Pipeline Inspector, Zack monitored the work performed on or near pipelines throughout a jobsite pursuant to Elk Energy's standards and procedures.

34. During the relevant period, these workers regularly worked for Elk Energy in excess of 40 hours a week for weeks at a time.

35. For example, Zack regularly worked between 60-80 hours a week on average.

36. During the relevant period, these workers worked for Elk Energy on a day-rate basis.

37. During the relevant period, these workers were not paid overtime for the hours they worked for Elk Energy in excess of 40 hours each week.

---

[2] http://www.elkenergyservices.com/aboutus.html (last visited July 27, 2022).

38. These workers make up the proposed Putative Class.

39. While exact job titles and job duties may differ, Elk Energy subjected these workers to the same or similar illegal pay practices for similar work.

40. Zack reported directly to Elk Energy management-level employees.

41. Throughout his employment with Elk Energy, Zack regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Elk Energy paid Zack a day-rate for each day worked, regardless of how many hours he worked in a day or week.

42. As a Pipeline Inspector, Zack regularly worked more than 10 hours each day, often for weeks at a time.

43. Zack did not hire or fire employees.

44. Zack did not exercise discretion and judgment as to matters of significance.

45. To the contrary, Zack's work was governed entirely by Elk Energy.

46. The Putative Class Members performed the same general job duties performed by Zack.

47. The Putative Class Members worked the same or similar schedule worked by Zack, regularly working more than 40 hours each week. Zack's work schedule is typical of the Putative Class Members.

48. During the relevant period, Elk Energy paid Zack and the Putative Class Members on a day-rate basis with no overtime compensation.

49. Zack and the Putative Class Members never received a salary.

50. Zack and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

51. Without the job performed by Zack and the Putative Class Members, Elk Energy would not have been able to complete its business objectives.

52. Zack and the Putative Class Members were economically dependent on Elk Energy and relied on Elk Energy for work and compensation.

53. Elk Energy determined the amount and type of compensation paid to Zack and the Putative Class Members.

54. Elk Energy set Zack's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Elk Energy.

55. Zack and the Putative Class Members worked in accordance with the schedule set by Elk Energy.

56. Zack and the Putative Class Members had to follow Elk Energy's policies and procedures.

57. Zack and the Putative Class Members' had to adhere to the quality standards put in place by Elk Energy.

58. Zack and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Elk Energy provided Zack and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

59. Zack and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

60. Elk Energy made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Zack and the Putative Class Members work.

61. Zack and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

62. Zack and the Putative Class Members did not market their services while employed by Elk Energy.

63. While employed by Elk Energy, Zack and the Putative Class Members worked exclusively for Elk Energy.

64. Elk Energy set Zack's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Elk Energy.

65. At all relevant times, Elk Energy maintained control, oversight, and direction of Zack and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

66. Elk Energy controlled Zack's and the Putative Class Members' pay.

67. Likewise, Elk Energy controlled Zack's and the Putative Class Members' work.

68. Zack's and the Putative Class Members' work had to adhere to the quality standards put in place by Elk Energy.

69. Zack and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

70. Elk Energy knew Zack and the Putative Class Members regularly worked for 10 or more hours a day for weeks at a time.

71. Elk Energy's records reflect the fact that Zack and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

72. Zack and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Zack and the Putative Class Members were paid on a day-rate basis.

73. Elk Energy set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Elk Energy's policies and procedures.

74. The work Zack and the Putative Class Members performed was an essential part of Elk Energy's core businesses.

75. Elk Energy controlled Zack's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

76. Elk Energy controlled all the significant or meaningful aspects of the job duties Zack and the Putative Class Members performed by requiring them to strictly adhere to Elk Energy's directives, policies, and procedures.

77. Elk Energy exercised control over the hours and locations Zack and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

78. Even though Zack and the Putative Class Members may have worked away from Elk Energy's offices without the constant presence of Elk Energy supervisors, Elk Energy still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

79. Very little skill, training, or initiative was required of Zack and the Putative Class Members to perform their job duties.

80. Indeed, the daily and weekly activities of Zack and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Elk Energy.

81. Virtually every job function was predetermined by Elk Energy, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

82. Elk Energy prohibited Zack and the Putative Class Members from varying their job duties outside of predetermined parameters and required Zack and the Putative Class Members to follow Elk Energy's policies, procedures, and directives.

83. Zack and the Putative Class Members performed routine job duties largely dictated by Elk Energy.

84. All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

85. All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

86. All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

87. Elk Energy uniformly denied Zack and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

88. Zack and the Putative Class Members were not employed on a salary basis.

89. Zack and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

90. Elk Energy's day-rate policy violated the FLSA because it deprived Zack and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

91. Elk Energy knew Zack and the Putative Class Members worked more than 40 hours in a week.

92. Elk Energy knew, or showed reckless disregard for whether, Zack and the Putative Class Members were not exempt from the FLSA's overtime provisions.

93. Nonetheless, Zack and the Putative Class Members were not paid overtime.

94. Elk Energy knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

95. Zack brings this claim as a collective action under the FLSA.

96. The Putative Class Members were victimized by Elk Energy's pattern, practice, and/or policy which was in willful violation of the FLSA.

97. Other Putative Class Members worked with Zack and indicated they were classified and paid in the same manner under Elk Energy's day-rate scheme and performed similar work without overtime pay.

98. Based on his experience with Elk Energy, Zack is aware that Elk Energy's illegal practices were imposed on the Putative Class Members.

99. The Putative Class Members are similarly situated in all relevant respects.

100. The Putative Class Members are blue-collar workers.

101. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

102. The illegal day-rate policy that Elk Energy imposed on Zack was likewise imposed on all Putative Class Members.

103. Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

104. The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

105. The overtime owed to Zack and the Putative Class Members will be calculated using the same records and using the same formula.

106. Zack's experiences are therefore typical of the experiences of the Putative Class Members.

107. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

108. Zack has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

109. Like each Putative Class Member, Zack has an interest in obtaining the unpaid overtime wages owed under federal law.

110. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Elk Energy will reap the unjust benefits of violating the FLSA.

112. Further, even if some of the Putative Class Members could afford individual litigation against Elk Energy, it would be unduly burdensome to the judicial system.

113. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

114. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

115. Among the common questions of law and fact are:

   a. Whether Elk Energy employed the Putative Class Members within the meaning of the FLSA;
   b. Whether Elk Energy's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;
   c. Whether Elk Energy's violation of the FLSA was willful; and
   d. Whether Elk Energy's illegal pay practice applied to the Putative Class Members.

116. Zack and the Putative Class Members sustained damages arising out of Elk Energy's illegal and uniform employment policy.

117. Zack knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

118. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Elk Energy's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

119. Elk Energy is liable under the FLSA for failing to pay overtime to Zack and the Putative Class Members.

120. Consistent with Elk Energy's illegal day-rate policy, Zack and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

121. As part of its regular business practices, Elk Energy intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Zack and the Putative Class Members.

122. Elk Energy's illegal day-rate policy deprived Zack and the Putative Class Members of the premium overtime wages they were owed under federal law.

123. Elk Energy was aware, or should have been aware, that the FLSA required it to pay Zack and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

124. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

125. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

126. Those similarly situated employees are known to Elk Energy, are readily identifiable, and can be located through Elk Energy's records.

## CAUSE OF ACTION:
## VIOLATION OF THE FLSA

127. Zack realleges and incorporates by reference all allegations in preceding paragraphs.

128. Zack brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

129. Elk Energy violated, and is violating, the FLSA by failing to pay Zack and the Putative Class Members overtime.

130. Elk Energy misclassified Zack and Putative Class Members for purposes of the FLSA overtime requirements.

131. Zack and the Putative Class Members were Elk Energy's employees for purposes of the FLSA overtime requirements.

132. Elk Energy was Zack's and the Putative Class Members' employer under the FLSA. Elk Energy suffered or permitted Zack and the Putative Class Members to work for or on its behalf during the relevant period.

133. Elk Energy cannot meet its burden to demonstrate Zack and Putative Class Members are exempt from overtime under the administrative exemption.

134. Elk Energy cannot meet its burden to demonstrate the Zack and Putative Class Members are exempt from overtime under the executive exemption.

135. Elk Energy cannot meet its burden to demonstrate Zack and Putative Class Members are exempt from overtime under the professional exemption.

136. Elk Energy cannot meet its burden to demonstrate Zack and Putative Class Members are exempt from overtime under the highly compensated exemption.

137. Elk Energy failed to guarantee Zack and the Putative Class Members a salary.

138. Elk Energy failed to pay Zack and the Putative Class Members overtime.

139. Elk Energy paid Zack and the Putative Class Members a day-rate.

140. Elk Energy knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Zack and the Putative Class Members overtime compensation.

141. Elk Energy's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

142. Accordingly, Zack and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

143. Zack demands a trial by jury.

## PRAYER

WHEREFORE, Robert Zack, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

> a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;
>
> b. A judgment against Elk Energy awarding Zack and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;
>
> c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;
>
> d. An order awarding attorneys' fees, costs, and expenses;
>
> e. Pre- and post-judgment interest at the highest applicable rates; and

  f. Such other and further relief as may be necessary and appropriate.

               Respectfully submitted,

               By: */s/ Michael A. Josephson*
               **Michael A. Josephson**
               PA ID No. 308410
               **Andrew W. Dunlap**
               Texas Bar No. 24078444
               **Taylor Montgomery\***
               Texas Bar No. 24106326
               **JOSEPHSON DUNLAP LLP**
               11 Greenway Plaza, Suite 3050
               Houston, Texas 77046
               713-352-1100 – Telephone
               713-352-3300 – Facsimile
               mjosephson@mybackwages.com
               adunlap@mybackwages.com
               tmontgomery@mybackwages.com
               \* *Pro Hac Vice application forthcoming*

               **Richard J. (Rex) Burch\***
               Texas Bar No. 24001807
               **Bruckner Burch, P.L.L.C.**
               11 Greenway Plaza, Suite 3025
               Houston, Texas 77046
               713-877-8788 – Telephone
               713-877-8065 – Facsimile
               rburch@brucknerburch.com
               \* *Pro Hac Vice application forthcoming*

               **Joshua P. Geist**
               PA ID No. 85745
               **William F. Goodrich**
               PA ID No. 30235
               **GOODRICH & GEIST PC**
               3634 California Ave.
               Pittsburgh, Pennsylvania 15212
               412-766-1455 – Telephone
               412-766-0300 – Facsimile
               josh@goodrichandgeist.com
               bill@goodrichandgeist.com

            **ATTORNEYS IN CHARGE FOR PLAINTIFF**